UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FYFE CO., LLC,**<br><br>　　　　　　　Plaintiff,<br>　vs.<br><br>**STRUCTURAL GROUP, INC.,**<br><br>　　　　　　　Defendant. | Case No. 3:14-cv-0078-GPC-NLS<br><br>**ORDER GRANTING DEFENDANT STRUCTURAL GROUP, INC.'S MOTION TO DISMISS**<br><br>**(ECF No. 12)** |

## INTRODUCTION

Presently before the Court is defendant Structural Group, Inc.'s ("Structural") Motion to Dismiss, Transfer, or Stay plaintiff Fyfe Co., LLC's ("Fyfe") Complaint pursuant to the first-to-file rule and 28 U.S.C. § 1404. Fyfe opposed the motion, (ECF No. 15) and Structural replied, (ECF No. 16). Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. Having considered the parties' submissions and the applicable law, the Court will **GRANT** Structural request to dismiss under the first-to-file rule.

## BACKGROUND

Fyfe manufactures construction strengthening system products, particularly fiber reinforced polymer ("FRP") systems, used for the repair and restoration of pipelines, masonry, concrete, and steel and wooden structures. (ECF No. 1 at 2.) Structural

provides specialty construction, repair and maintenance services internationally and throughout the United States. (ECF No. 1 at 1-2.) On November 15, 2011 Fyfe and Structural entered into a Private Label Agreement ("PLA") whereby Fyfe would supply Structural with Fyfe's Tyfo® products so that Structural could re-brand, market, and sell them under its "V-wrap" label. (ECF No. 16-2, Ex. A at 1.) The PLA also allowed Structural to use Fyfe's products for construction and restoration projects. (ECF No. 16-2, Ex. A at 1.) Because Fyfe's Tyfo® products are patented and trademarked, Structural is not permitted to re-brand and sell Tyfo® products without the rights bestowed upon it by the PLA. (ECF No. 12-2, Ex. A at 13; ECF No. 16-2, Ex. A at 1.)

**A.    Maryland Action I**

On January 16, 2013, Fyfe and two related corporate entities sued Structural and four of Fyfe's previous employees whom Structural had hired ("Individual Defendants") in the U.S. District Court for the District of Maryland.[1] There, Fyfe alleges Structural and the Individual Defendants illegally conspired to injure Fyfe's business by: (1) violating contractual duties owed to it; (2) taking, transferring, accepting and using Fyfe's confidential business information and trade secrets; and (3) improperly competing with Fyfe ("Maryland Action I"). (ECF No. 12-3, Ex. A at 2.) Fyfe also alleges Structural breached the following provision of the PLA:

> STRUCTURAL agrees to exclusively promote, purchase, install the FYFE tyfo® FRP systems including all system compatible material only as defined by the terms of this agreement and further agrees not to compete with FYFE or purchase from other vendors without prior written authorization from FYFE during the terms of this agreement except where FYFE Products are specifically excluded or not approved.

(ECF No. 16-2, Ex. A at 4.) Per the PLA's terms this provision extends through October 1, 2016. (ECF No. 16-2, Ex. A at 1.) Fyfe claims that, by hiring the Individual Defendants and using Fyfe's products to bid on projects, Structural breached

---

[1] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of facts relating to the procedural histories of this case, Maryland Action I, Fyfe Co., LLC v. Structural Group, Inc., 1:13-cv-00176-CCB, and Maryland Action II, Structural Group, Inc. V. Fyfe Co., LLC, 1:14-cv-00078-CCB.

the PLA's non-compete provision (Structural "agrees not to compete with FYFE"). (ECF No. 12-2, Ex. A at 34.)

**B.     Maryland Action II**

On March 22, 2013, after Fyfe filed Maryland Action I, Fyfe gave Structural notice that it intended to terminate a license to perform work on certain water transmission projects, in which Structural was using Fyfe's patented products ("License"). (ECF No. 12-4 at 2.) Three months later Fyfe purported to terminate the License, effective October 1, 2013. (ECF No. 12-4 at 2.) Consequently, on December 20, 2013 Structural notified Fyfe of its position that it was no longer obligated to exclusively purchase Fyfe's products pursuant to the PLA after the October 1, 2013 termination date of the License. (ECF No. 1 at 3.) Fyfe responded that, despite its termination of the License, Structural was still under a continuing obligation under the PLA to exclusively purchase Fyfe's products through the PLA's 2016 expiration date. (ECF No. 1 at 3; ECF No. 12-4, Ex. E.) Fyfe further warned that Structural's "failure to purchase all of its FRP needs from Fyfe will constitute a breach of the PLA" because Structural "agree[d] to exclusively promote, purchase, [and] install the FYFE tyfo® FRP systems . . . during the terms of the agreement . . . ." (ECF No. 12-4, Ex. E.)

Due to the dispute over the PLA's exclusivity provision, on January 10, 2014, at 4:24 p.m. EST, Structural filed a complaint against Fyfe in the District Court of Maryland for declaratory judgment and breach of contract ("Maryland Action II"). (ECF No. 12-1, Ex. B.) Structural designated the case as a "related case" to Maryland Action I. (ECF No. 12-3, Ex. C at 62.) Maryland Action II was thereafter assigned to the same district judge as in Maryland Action I. (ECF No. 12-1 at 10.) In Maryland Action II, Structural seeks declaratory relief as to its rights and obligations under the PLA's exclusivity provision. (ECF No. 12-1 at 10.)

**C.     California Action**

Fyfe commenced the instant action (the "California Action") on January 10, 2014, at 6:42 p.m. EST—approximately two and a half hours after Structural filed

Maryland Action II. (ECF 12-1, Ex. F.)  In the California Action, Fyfe alleges breach of contract and seeks declaratory relief and specific performance of the PLA's exclusivity provision.  In essence, Fyfe alleges that, under the PLA's terms, Structural is obligated to exclusively purchase products from Fyfe until the PLA's 2016 expiration date.  (ECF No. 1 at 4.)

## DISCUSSION

Structural now challenges venue in two ways.  First, Structural moves to dismiss or stay the California Action under the first-to-file rule.  Second, Structural requests in the alternative that the Court transfer this case to the District of Maryland pursuant to 28 U.S.C. § 1404.

"The first-to-file rule is 'a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'" Inherent.com v. Martindate-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (quoting Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94–95 (9th Cit. 1982) (citations omitted).  Under the rule, when cases involving the same parties and issues have been filed in two different districts, the second district court may transfer, stay, or dismiss the second case if it would further the interests of judicial economy and avoid duplicative litigation.  Inherent.com, 420 F. Supp. 2d at 1097; see also Saes Getters S.P.A. v. Aeronex, Inc., 219 F. Supp. 2d 1081, 1089 (S.D. Cal. 2002) ("Where substantially similar actions are proceeding in different courts, court of the later-filed action should defer to the jurisdiction of the first-filed court by either dismissing, staying, or transferring the later-filed suit.").

Three factors are considered when determining whether the first-to-file rule applies: (1) chronology of the two actions, (2) similarity of the parties, and (3) similarity of the issues.  See Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625 (9th Cir. 1991).  Structural contends the first-to-file rule is applicable with respect to both Maryland Actions.

**A.      Maryland Action I**

Structural argues this Court should decline to exercise jurisdiction because Maryland Action I was the first-filed case and involves substantially similar parties and issues.

In opposition, Fyfe asserts that, although it filed Maryland Action I almost a year before this lawsuit, the first-to-file rule is inapplicable because the two actions involve different parties and issues. Fyfe argues the parties in this case and Maryland Action I are dissimilar because not all of the corporate entities and Individual Defendants named in Maryland Action I are parties to this action. Fyfe further argues the issues are not sufficiently similar because, in Maryland Action I, Fyfe alleges Structural violated its covenant not to compete; whereas, here, Structural is alleged to have breached its obligation to exclusively purchase Fyfe's products.

The Court concludes the first-to-file rule is applicable with regard to Maryland Action I. It is undisputed that Maryland Action I was filed before the California Action. The record also reflects the parties in both actions are substantially similar. Although certain corporate entities and Individual Defendants are not named in the California Action, "the first-to-file rule does not require strict identity of the parties, but rather substantial similarity." Adoma v. University of Phoenix, Inc., 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (citing Inherent.com, 420 F. Supp. 2d at 1097). In other words, exact identity is not required to invoke the first-to-file rule. Wallerstein v. Dole Fresh Vegetables, Inc., 967 F. Supp. 2d 1289, 1290 (N.D. Cal. 2013) (citations omitted); see also Pacific Coast Breaker, Inc. v. Connecticut Electric, Inc., 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) ("The [first-to-file] rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters.") (citations omitted). Therefore, the absence of certain parties from the California Action does not render the parties too dissimilar for the rule's application in this instance.

As to the similarity of issues, the Court agrees with Structural that the issues in

this case and Maryland Action I are substantially similar. In the Second Amended Complaint filed in Maryland Action I, Fyfe claims Structural breached the PLA's <u>non-compete provision</u> by hiring Individual Defendants and engaging in a plan with them to misappropriate Fyfe's confidential information and trade secrets. (ECF No. 12-3 at 33.) In the instant action, Fyfe asserts Structural breached the PLA's <u>exclusivity provision</u> when Structural stated its intention to no longer purchase Fyfe's products from Fyfe. (ECF No. 1 at 4.) Although both cases allege breach of different provisions of the PLA, resolution of the claims in both instances will necessarily turn on the court's interpretation of the PLA. Indeed, the non-compete and exclusivity provisions are found under the same heading in the PLA. Further, the Court agrees with Structural that the two provisions should not be read in isolation from one another or the surrounding words in the restrictive covenant because to do so would deprive each of its contextual meaning. The Court thus finds the issues in this case and Maryland Action I are sufficiently similar to apply the first-to-file rule.

**B.     Maryland Action II**

With regard to Maryland Action II, Structural contends this Court should decline to exercise jurisdiction because: (1) Structural filed Maryland Action II before Fyfe filed the California Action; and (2) both cases require interpretation of the same exclusivity provision in the PLA. Fyfe concedes this lawsuit and Maryland Action II involve similar issues and parties, but argues Structural is not entitled to priority under the first-to-file rule because the Ninth Circuit does not rigidly apply the rule when parties file their respective suits within hours of one another.

In advancing this argument, Fyfe cites two cases. These out-of-circuit authorities, however, are distinguishable from the instant action because the Second Circuit applies a different test for determining whether the first-to-file rule is warranted in a given case. <u>See</u> <u>Ontel Prods., Inc. v. Project Strategies Corp.</u>, 899 F. Supp. 1144, 1153-55 (S.D.N.Y. 1995) (concluding that temporal precedence is not dispositive and adopting the same analysis as a motion to transfer pursuant to 28 U.S.C. § 1404(a));

Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir. 1978) ("The rule in this circuit is that the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action . . . or unless there are special circumstances which justify giving priority to the second.'") (citations omitted) (internal quotation marks omitted). Fyfe further contends that California courts have repeatedly refused to apply the first-to-file rule when the time difference between filings is a matter of hours or days. The cases Fyfe relies on, however, are unpersuasive because they do not involve the application of the first-to-file rule where the plaintiff in a later-filed suit had already commenced litigation (involving similar issues and parties) in the original forum.

Although the chronology factor is a closer question in this instance, exercising jurisdiction in the California Action would be counter to the interests of judicial efficiency and avoidance of duplicative litigation, as two courts would be interpreting the same provision of the same contract between the exact same parties. Consequently, the first-to-file rule applies with respect to Maryland Action II.

**C.    Considerations of Sound Judicial Administration**

Fyfe also argues that even if the requirements of the first-to-file rule are met in Maryland Actions I and II, equitable concerns militate against application of the rule in this instance. Fyfe identifies two reasons why considerations of sound judicial administration weigh in favor of this Court retaining jurisdiction: (1) the District Court of Maryland does not have compulsory process over two witnesses—Ed Fyfe and Heath Carr—who negotiated the terms of the PLA and can testify regarding Fyfe's intent when the agreement was executed; and (2) a California court is better suited to adjudicate this case because the PLA requires application of California law.

This Court recognizes that the first-to-file rule is not rigidly applied in every circumstance and judges, in the exercise of their discretion, can dispense with the rule for reasons of equity. Alltrade, 946 F.2d at 628; see also Pacesetter Systems, Inc., 678 F.2d at 95 ("[The] 'first-to-file' rule is not a rigid or inflexible rule to be mechanically

applies, but rather is to be applied with a view to the dictates of sound judicial administration."); Kerotest Mfg. Co. v. C-C-Two Fire Equipment Co., 342 U.S. 180, 183–84 (1952) ("Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems."). The circumstances warranting an exception to the rule based upon equitable considerations include bad faith, anticipatory suit, and forum shopping. Alltrade, 946 F.2d at 627–28 (internal citations omitted).

Here, there is no indication that Structural filed Maryland Action II for an improper purpose. With regard to Fyfe, however, the Court is confounded as to why Fyfe would now claim the Southern District of California is the more appropriate forum for the instant action after having already selected the District of Maryland to litigate Maryland Action I, which involves substantially the same parties and issues as this action. The Court finds Fyfe's actions indicative of forum shopping and therefore finds Fyfe's equitable arguments unpersuasive.

Because the interests of judicial efficiency would be thwarted by two courts adjudicating the same agreement, this Court declines to exercise jurisdiction in the instant case.[2]

## **CONCLUSION & ORDER**

Based on the foregoing, the Court concludes that dismissal is warranted under the first-to-file rule. Accordingly, **IT IS HEREBY ORDERED** that:

1. Structural's Motion to Dismiss, (ECF No. 12), is **GRANTED**;
2. This case is **DISMISSED WITHOUT PREJUDICE** pursuant to the first-to-file rule. The Clerk of Court is directed to enter **FINAL JUDGMENT** accordingly and then to **TERMINATE** this case.

DATED: April 30, 2014

HON. GONZALO P. CURIEL
United States District Judge

---

[2] Because this Court grants Structural's motion to dismiss under the first-to-file rule, this Court does not address Structural's alternative motion to transfer pursuant to 28 U.S.C. § 1404(a).